UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL R. CARTER,

    Plaintiff,                         CASE NO. 18-12714
                                          HON. DENISE PAGE HOOD

v.

CROSSCOUNTRY MORTGAGE, INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#2]

### I. BACKGROUND

#### A. Procedural Background

On or about March 7, 2017, Plaintiff Daniel R. Carter ("Carter") commenced this action in the 30th Circuit Court for Ingham County, Michigan. (Doc # 1, Pg ID 2) On August 14, 2017, Carter amended his initial complaint and named CrossCountry Mortgage, Inc. ("CrossCountry") as a defendant and alleged two state law claims: (1) Breach of Contract; and (2) Breach of Fiduciary Duty. (*Id.*) The parties involved in the action stipulated to change the venue of the case to the 4th Circuit Court for the County of Jackson, Michigan on October 11, 2017. (*Id.* at 1-2.) CrossCountry removed this action to federal court on August 30, 2018. (Doc # 1-3, Pg ID 27)

1

On September 19, 2018, CrossCountry filed a Motion to Dismiss. (Doc # 2) Carter filed his Response on October 10, 2018. (Doc # 6) CrossCountry filed its Reply on October 24, 2018. (Doc # 8) Carter filed an Amended Response on November 16, 2018.[1] (Doc # 10) This Motion is currently before the Court.

## B. Factual Background

On January 9, 2016, Carter purchased a home at 12950 Cooper Road, Leslie, Michigan 49251 ("subject property"), and obtained a mortgage through CrossCountry pursuant to a Mortgage Agreement. (Doc # 1-2, Pg ID 11, 18) Following the execution of the Mortgage Agreement, CrossCountry paid Carter's insurance premiums directly to his insurance carrier at the closing. (Doc # 1-2, Pg ID 11) The premiums were paid through the title company out of escrowed funds. (*Id.*) The insurance premiums were part of Carter's mortgage payments consistent with the Mortgage Agreement's escrow provisions. (*Id.*) Carter's insurance carrier subsequently raised the insurance premiums and provided notice to CrossCountry. (*Id.*) Even though Carter's insurance premiums were part of his mortgage payments pursuant to the Agreement, CrossCountry never paid the increased premiums. (*Id.*) Upon contacting his insurance carrier on August 17, 2016, Carter was told that his

---

[1] Plaintiff notes that his Amended Response only corrects citation errors pursuant to the local court rules. (Doc # 10, Pg ID 197)

policy was cancelled. (*Id.* at 12.) On December 18, 2016, Carter's home was destroyed by fire. (*Id.*)

Carter alleges that CrossCountry breached the contract between the parties by not abiding by the terms of their Agreement. (*Id.*) According to Carter, the Agreement clearly indicated that CrossCountry was responsible for paying any increased premiums. (*Id.* at 13.) Further, Carter claims that other various duties that were required to be completed by CrossCountry, pursuant to the Mortgage Agreement, were not satisfied, including:

1. Failing to apply escrowed funds to the insurance premiums that CrossCountry required Carter to escrow in paragraph 1 of the Mortgage Agreement.
2. Failing to perform its obligations at origination of the loan to apply escrowed funds as required in paragraph 3 of the Mortgage Agreement.
3. Failing to properly collect and hold funds sufficient to apply the funds for insurance premiums at the time specified under RESPA.
4. Failing in its contractual duty to analyze and verify the escrow items as required by paragraph 3 in the Mortgage Agreement.
5. Failing to properly estimate the amount of escrow funds due on the basis of current data and reasonable estimate.
6. Failing to account for and apply surplus funds to Carter's insurance premiums or spread out any shortage over 12 months as required by paragraph 3 in the Mortgage Agreement.
7. Failing to apply forced-placed coverage proceeds to restoration or repair of the property as required by paragraph 5 of the Mortgage Agreement.
8. Failing to respond to and address a notice issued by the insurance carrier pursuant to paragraph 15 of the Mortgage Agreement.

9. Failing to make timely payments from escrow pursuant to the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2601 *et seq.*) and Regulation X (12 C.F.R., Part 1024).
10. Failing to pay insurance premiums as required by RESPA and Regulation X.
11. Failing to retain the notice of increased premiums and by failing to maintain a proper servicing file as required by RESPA and Regulation X.
12. Failing to have proper procedures in place in regard to retaining notices provided by insurance carriers as required by RESPA and Regulation X.
13. Breaching its duties under RESPA to make timely escrow payments to avoid a penalty.
14. Breaching its duty by failing to pay insurance premiums as required by 12 C.F.R. 1024.34(a).
15. Breaching its duty under RESPA by failing to retain the notice of increased premiums and by failing to maintain a proper servicing file.
16. Breaching its duty under RESPA by failing to have proper procedures in place in regard to retaining notices provided by insurance carriers.

(*Id.* at 12-13.)

Carter also alleges that due to his relationship with CrossCountry, CrossCountry breached certain fiduciary duties that it neglected to satisfy pursuant to the Mortgage Agreement. (*Id.* at 14.) Carter argues that CrossCountry owed him a fiduciary duty to not allow his homeowner's policy to lapse after it had assumed the duty to pay the premiums. (*Id.* at 15.) Carter further argues that CrossCountry's failure to pay the premiums was in violation of RESPA and 12 C.F.R. 1024.34(a). (*Id.*)

Carter claims that the amount in controversy exceeds $25,000, and he requests damages for any amount that he may be entitled to, plus costs, interest, and attorney

fees. (*Id.* at 16.) Carter also requests that the Court award him whatever amount it deems to be just and proper. (*Id.*)

## II. MOTION TO DISMISS

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (*quoting Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## B. Breach of Contract

CrossCountry argues that Carter's breach of contract claim should be dismissed pursuant to Fed. R. Civ. P. 8(a) because Carter's pleading does not contain a short and plain statement of the claim showing that he is entitled to relief. According to CrossCountry, Carter fails to allege enough facts to demonstrate that any particular sections of RESPA and/or Regulation X were violated. CrossCountry further asserts that Carter's claim must fail since there is a lack of a private cause of action under RESPA and Regulation X. It is CrossCountry's contention that there can be no private cause of action in these instances because issues pertaining to the management of escrow accounts, notices, and policies and procedures, are governed by the Secretary.

In response, Carter argues that other courts have upheld summary disposition for plaintiffs in situations involving breach of contract claims in relation to mortgage companies failing to pay premiums out of escrow. Carter also claims that courts

construe the RESPA statute broadly to effectuate its purposes. In support of his argument, Carter cites to Sixth Circuit cases in which he alleges courts have reversed district court dismissals of RESPA claims that were based on assertedly inadequate pleaded damages.

To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract, (2) the terms of the contract, (3) breach of the contract, and (4) an injury caused by the breach. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994). "Express provisions for termination govern a contract and courts cannot create a contractual liability where the express intent of the parties was to terminate the agreement upon a given condition." *E3A v. Bank of America, N.A.*, No. 13-10277, 2013 WL 1499560, at *2 (E.D. Mich. Apr. 11, 2013).

7

The Court finds that Carter's Breach of Contract claim fails. The alleged violations alluded to by Carter are bare, lack factual support, and can be classified as labels and conclusions. Carter has explained which sections of the Agreement, RESPA, and Regulation X have been violated, but has not identified any facts that could lead the Court to agree with his assertions. Carter has even neglected to reveal to the Court basic information such as, but not limited to: (1) the amounts of the original and increased premiums; and (2) how much in damages he is requesting and why he believes he is owed that amount. Although Carter arguably addresses these concerns in his Response, the Court will not consider these assertions. The Court concludes that Carter has failed to state a legitimate Breach of Contract claim because the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

**C. Breach of Fiduciary Duty**

CrossCountry argues that it did not breach any alleged fiduciary duty that it had with Carter because there was no fiduciary relationship between the two parties. Specifically, CrossCountry asserts that it did not have a fiduciary relationship with Carter since there was no special relationship formed based on their Agreement. According to CrossCountry, generally, fiduciary relationships consist of situations where one party holds a position of superiority. CrossCountry contends that here, no party was in a position of superiority because while CrossCountry has to rely on

Carter to purchase insurance, send notices, and make monthly payments, in turn, Carter has to rely on CrossCountry to make payments for the insurance premiums once it receives notice from Carter.

Carter responds by arguing that an escrow agent may be liable in tort for the negligent performance of its duties as escrow agent or breach of fiduciary responsibilities owed to its principal. Even though Carter acknowledges that fiduciary relationships do not generally arise within the lender-borrower context, Carter alleges that a fiduciary relationship can exist when there is a reposing of faith, confidence, and trust. Carter further claims that courts have held that a fiduciary relationship can also be found when one party relies on another party's judgment and advice. Carter argues that since CrossCountry assumed the duty to pay for his homeowner's insurance from escrowed funds, and neglected to do so, CrossCountry breached their alleged fiduciary relationship.

Fiduciary relationships entail one party reposing faith, confidence, and trust in another's judgment and advice. *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 515, 309 N.W.2d 645, 648 (1981). In these relationships, "there is confidence reposed on one side, and the resulting superiority and influence on the other." *In re Woods Estate,* 374 Mich. 278, 283, 132 N.W.2d 35, 39 (1965) (quoting 3 Pomeroy, *Equity Jurisprudence* § 956a (5th ed.1941)).

*"Generally,* no fiduciary duties arise within the lender-borrower context." *Kevelighan v. Trott & Trott, P.C.,* 771 F.Supp.2d 763, 779 (E.D.Mich.2010). Under Michigan law, outside of the set of relationships "that automatically yield a fiduciary obligation," (trustees to beneficiaries, guardians to wards, attorneys to clients, and doctors to patients) "whether there exists a confidential relationship apart from a well-defined fiduciary category is a question of fact." *Fremont Reorganizing Corp. v. Duke,* 811 F.Supp.2d 1323, 1345 (E.D.Mich.2011) (internal quotation marks and citation omitted). "A fiduciary relationship usually arises in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer." *London v. Glassford,* No. 306251, 2013 WL 85801, at *4 (Mich.Ct.App. Jan.8, 2013) (citation omitted).

CrossCountry could not have breached any alleged fiduciary duty due to the absence of a fiduciary relationship between Carter and CrossCountry. Carter has not identified in his Complaint that he has a special relationship with CrossCountry that would fall under any of the four aforementioned categories. Even if Carter had made

an argument that such a relationship existed, Carter's claim would still have failed because courts have held that a fiduciary relationship cannot arise in situations such as the one before the Court. *See Kevelighan*, 771 F.Supp.2d at 779 (applying Michigan law and holding that a fiduciary duty does not arise in a relationship based on a mortgage). The Court must dismiss Carter's Breach of Fiduciary Duty claim.

### D. Request to Amend Complaint

Carter requests that if the Court finds that he has not sufficiently pled his claim, he asks that the Court allow him to amend his Complaint. (Doc # 6, Pg ID 104) The Court will grant Carter's request to amend his Complaint and correct any deficiencies related to his Breach of Contract claim. The Court's ruling is limited to Carter's Breach of Contract claim however because as the Court notes above, Carter's Breach of Fiduciary Duty claim fails due to the absence of a fiduciary relationship between Carter and CrossCountry. *Kevelighan*, 771 F.Supp.2d at 779.

The factors that this Court is to consider when determining whether to permit a plaintiff to file an amended complaint are:

> (1) the delay in filing the motion,
> (2) the lack of notice to the other party,
> (3) bad faith by the moving party,
> (4) repeated failure to cure deficiencies by previous amendments,
> (5) undue prejudice to the opposing party, and
> (6) futility of the amendment.

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).

Pursuant to Fed. R. Civ. P. 15(a)(2), the Court finds that justice requires that Carter have the opportunity to amend his Complaint in order to plead a legitimate Breach of Contract claim. There are no facts that demonstrate that Carter acted in bad faith, and an amendment in this instance would not be futile. Further, the Court does not believe that CrossCountry will be unfairly prejudiced if Carter is allowed to amend his Complaint. Therefore, if Carter wishes to amend his Complaint, the Court gives him the ability to do so.

### III. CONCLUSION

IT IS HEREBY ORDERED that Defendant CrossCountry Mortgage, Inc.'s Motion to Dismiss (Doc # 2) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff Daniel R. Carter's Complaint (Doc # 1) is **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED that Plaintiff Daniel R. Carter may file an amended complaint within 14 days from the date of this Order.

IT IS FURTHER ORDERED that Plaintiff Daniel R. Carter's Motion for

Summary Judgment (Doc # 11) is **MOOT**.

                                             s/Denise Page Hood
                                             Chief Judge, U. S. District Court

Dated: February 11, 2019