UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL R. CARTER,

    Plaintiff,                       CASE NO. 18-12714
                                       HON. DENISE PAGE HOOD

v.

CROSSCOUNTRY MORTGAGE, INC.,

    Defendant.
_____/

**<u>ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS [#18]</u>**

**I.   BACKGROUND**

  **A. Procedural Background**

On or about March 7, 2017, Plaintiff Daniel R. Carter ("Carter") commenced this action in the 30th Circuit Court for Ingham County, Michigan. (Doc # 1, Pg ID 2) On August 14, 2017, Carter amended his Complaint and named CrossCountry Mortgage, Inc. ("CrossCountry") as a defendant and alleged two state law claims: (1) Breach of Contract; and (2) Breach of Fiduciary Duty. (*Id.*) The parties involved in the action stipulated to change the venue of the case to the 4th Circuit Court for the County of Jackson, Michigan on October 11, 2017. (*Id.* at 1-2.) CrossCountry removed this action to federal court on August 30, 2018. (Doc # 1-3, Pg ID 27)

On September 19, 2018, CrossCountry filed a Motion to Dismiss Carter's Amended Complaint (Doc # 2), which the Court granted on February 11, 2019 (Doc # 15). In the Court's Order granting CrossCountry's Motion to Dismiss (Doc # 2), it gave Carter the ability to amend his Amended Complaint, but ordered that he could only pursue his Breach of Contract claim. (Doc # 15, Pg ID 470-471) Carter filed his Third Amended Complaint on February 21, 2019, alleging: (1) Breach of Contract (Common Law) (Count I); and Breach of Contract (the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* and Regulation X, 12 C.F.R. § 1024) (Count II). (Doc # 16) CrossCountry filed a Motion to Dismiss Carter's Third Amended Complaint on March 14, 2019. (Doc # 18) Carter filed his Response on April 4, 2019 (Doc # 20) and CrossCountry filed its Reply on April 18, 2019 (Doc # 21). This Motion is currently before the Court.

**B. Factual Background**

On January 9, 2016, Carter purchased a home at 12950 Cooper Road, Leslie, Michigan 49251 ("subject property"). (Doc # 16, Pg ID 474) The funds used to purchase the subject property were provided by CrossCountry pursuant to a Mortgage Agreement. (Doc # 16, Pg ID 474; Doc # 16-2) Following the execution of the Mortgage Agreement, CrossCountry paid a one-year property insurance premium of $1,010.00 to State Farm Insurance ("State Farm") through the title company out of escrowed funds. (Doc # 16, Pg ID 474; Doc # 16-3) According to

the escrow and property insurance provisions of the Mortgage Agreement, Carter's monthly payments included sums that were to be held in escrow by CrossCountry for property insurance premiums. (Doc # 16, Pg ID 474)

On January 14, 2016, State Farm notified CrossCountry that there would be a property insurance premium increase of $642.00. (Doc # 16, Pg ID 475; Doc # 16-5) CrossCountry neglected to pay the $642.00 property insurance premium increase even though the terms of the Mortgage Agreement and RESPA dictated that CrossCountry was obligated to pay any increased premiums. (Doc # 16, Pg ID 475) On July 13, 2016, State Farm sent CrossCountry a Notice of Cancellation as a result of CrossCountry's failure to pay the premium increase. (Doc # 16, Pg ID 475; Doc # 16-6) The Notice of Cancellation was effective beginning August 17, 2016, and on that date, Carter's State Farm coverage was terminated. (Doc # 16, Pg ID 475-476)

Carter's residence was destroyed by fire on December 18, 2016. (*Id.* at 476.) The destruction of Carter's house caused him to suffer various financial losses. (*Id.*) Carter alleges that these losses include: $252,000.00 in "structure loss"; $189,000.00 in "personal property loss"; $7,000.00 in "debris removal"; and an unlimited amount in the "loss of the use" of his residence. (*Id.*) Carter now asks the Court to find that CrossCountry breached the Mortgage Agreement, which he claims was the direct and proximate cause of his financial losses.

## II. ANALYSIS

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (*quoting Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the

plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Breach of Contract (Common Law)

To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract; (2) the terms of the contract; (3) breach of the contract; and (4) an injury caused by the breach. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994). "Express provisions for termination govern a contract and courts cannot create a contractual liability where the express intent of the parties was to terminate the agreement upon

a given condition." *E3A v. Bank of America, N.A.*, No. 13-10277, 2013 WL 1499560, at *2 (E.D. Mich. Apr. 11, 2013).

CrossCountry argues that Carter's common law Breach of Contract claim must fail because he did not abide by the Mortgage Agreement's conditions. (Doc # 18, Pg ID 522-523) CrossCountry asserts that pursuant to the Mortgage Agreement, Carter was required to provide CrossCountry with notice that State Farm's property insurance premium was going to increase. (*Id.* at 524.) Since Carter never gave CrossCountry notice about the increased premium, CrossCountry contends that Carter cannot maintain a Breach of Contract action against it because in Michigan, if an individual commits the first substantial breach of contract, they cannot then maintain an action against the other contracting party for failure to perform. *Sentry Ins. v. Lardner Elevator Co.*, 153 Mich. App. 317, 323 (1986).

Carter responds by arguing that the Mortgage Agreement only requires that CrossCountry receive *any* notice regarding premiums. (Doc # 20, Pg ID 588) Carter contends that because State Farm put CrossCountry on notice about the increased premium—twice before the policy was cancelled—the Mortgage Agreement's notice provision was satisfied. (*Id.* at 589.) Carter alleges that the "obvious intent" of the Mortgage Agreement's provisions is that CrossCountry be put on notice, regardless of the source of the notice. (*Id.*)

First it is necessary to determine whether the Mortgage Agreement constitutes a valid contract. Under Michigan law, the elements of a valid contract are: (1) parties competent to enter into a contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja,* 187 Mich.App. 418, 422 (1991). Neither party contests that the Mortgage Agreement is a legitimate contract. The parties are competent, and the issue of a loan being distributed to purchase property is a proper subject matter. The loan issued in the amount of $221,079.00 is sufficient legal consideration.[1] Both parties agreed to the terms of the mortgage, which is clear based on the signatures on the Agreement and the language of the Agreement. The Court finds that the Mortgage Agreement is a lawful contract under Michigan law.

Next, the Court assesses the notice provision of the Mortgage Agreement. The relevant portions of the Mortgage Agreement read:

> 3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments,… (c) premiums for any and all insurance required by Lender under Section 5…Borrower shall promptly furnish to lender all notices of amounts to be paid under this Section.
>
> 5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire,

---

[1] *See* Doc # 18-2, Pg ID 533.

hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance…

If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type of amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.

15. Notices. [Any] notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.

(Doc # 16-2, Pg ID 486-487,490) The plain language of the Mortgage Agreement states that the *borrower* is required to promptly furnish to the *lender* all notices of amounts to be paid. Based on the notice requirement, Carter was required to deliver notice—by mail—to CrossCountry and alert it as to the premium increase. He admittedly failed to do so. (Doc # 20, Pg ID 586) Therefore, Carter did not comply with the Mortgage Agreement's notice provision.

Consequently, CrossCountry argues that Carter's Breach of Contract claim cannot succeed because he committed the first breach of the contract that is at issue. The Court does not agree. The Sixth Circuit has determined that "[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *See Chrysler Int'l Corp. v. Cherokee*

*Export Co.,* 134 F.3d 738, 742 (6th Cir.1998) (internal citations omitted). The determining factor in Michigan breach of contract cases is therefore whether a first breach is *substantial*. *Id.* The Michigan Supreme Court has explained that a "substantial breach" is one "where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as causing of a complete failure of consideration of the prevention of further performance by the other party." *Id.*

In our case, Carter's breach was not *substantial* because CrossCountry could have easily performed its duties pursuant to the Mortgage Agreement even though Carter did not perform *his* duties. CrossCountry was made aware of the increased premium by State Farm and it does not argue otherwise. The Court finds that while Carter did breach the Mortgage Agreement, the breach was not substantial enough to excuse CrossCountry from its performance. CrossCountry's Motion is denied as to Carter's common law breach of contract claim.

### C. Breach of Contract (RESPA and Regulation X)

CrossCountry argues that Carter's Breach of Contract claim premised on RESPA and Regulation X fails due to there being a lack of a private cause of action under RESPA and Regulation X. (Doc # 18, Pg ID 525) CrossCountry cites to *Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859 (E.D. Mich. 2015) and *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763 (E.D. Mich. 2010) in support

9

of its claim, and asserts that in those cases, the courts found that private causes of action under RESPA and Regulation X are extremely limited. (*Id.* at 525-526.) The main contention by CrossCountry is that regulations may only invoke a private cause of action if they expressly create such a right. *Schmidt*, 106 F. Supp. 3d at 868. CrossCountry alleges that since none of the sections of RESPA or Regulation X that Carter claims were violated create a private cause of action, his Breach of Contract claim cannot succeed on these grounds. (Doc # 18, Pg ID 527)

Carter responds to CrossCountry's arguments by asserting that it has sufficiently pled a Breach of Contract claim under RESPA and Regulation X because RESPA was incorporated in the Mortgage Agreement, which it claims subjects CrossCountry to his private cause of action. (Doc # 20, Pg ID 595) Carter also alleges that *Schmidt* and *Kevelighan* actually support his Breach of Contract claim and argues that in both cases, the courts acknowledged that there was potential for a private cause of action and remedy under RESPA. (*Id.*) Further, Carter supports his claim by arguing that in *Marais v. Chase Home Fin. LLC*, 736 F.3d 711 (6th Cir. 2013) and *Michigan Nat. Bank v. Kroger Co.*, 619 F. Supp. 1149 (E.D. Mich. 1985), the courts permitted private causes of action under RESPA.

"Congress can create rights of action in statutes by express provision or by implication." *Schmidt*, 106 F. Supp. 3d at 868. In determining whether a private right of action exists, the Supreme Court has found that the *intent* of Congress is

controlling. *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). Although creating such rights *expressly* has been deemed the "far better course," in certain limited circumstances the failure of Congress to expressly create a right is not inconsistent with an intent on its part to have such a remedy available to persons benefited by its legislation. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 374 (1982) (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 690–691 (1979)). The Supreme Court has used various frameworks to find *implied* rights of action, but the most determinative factor has been assessing "whether Congress intended to create the private right of action," and that determination begins and often ends with the statutory language and framework. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 569 (1979); *Schmidt*, 106 F. Supp. 3d at 869. Courts are tasked with interpreting statutes with the goal being to determine whether they display an intent "to create not just a private *right* but also a private *remedy*." *Alexander*, 532 U.S. at 286.

The Court finds that here, there is no private cause of action under the RESPA and Regulation X sections that Carter uses as the basis for his second Breach of Contract claim. In Carter's Third Amended Complaint, he alleges that CrossCountry breached the Mortgage Agreement pursuant to 12 C.F.R. § 1024.17(c)(2)-(3), (f), (g), and (k), 12 C.F.R. § 1024.34, and 12 C.F.R. § 1024.38(a), (b), and (c)(1)-(2).

(Doc # 16, Pg ID 477-478)  There is no indication that Congress intended for there to be a private cause of action under these provisions—either expressly or impliedly.

Carter claims that 12 C.F.R. § 1024.17, 12 C.F.R. § 1024.34, and 12 C.F.R. § 1024.38 were violated.  The plain language of those provisions demonstrates that Congress did not intend for Carter to rely on those statutory sections as the basis for his second Breach of Contract claim.  As an initial matter, it is clear that Congress has not *explicitly* created a private cause of action under these provisions.  If Congress had, the language would straightforwardly express its intentions, which is not the case.  *See* 12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).").  Regarding an *implied* private cause of action, the Court finds that such an interpretation of the statutory provisions is unfounded.  The above provisions offer servicers and borrowers with guidance and even arguably, rules, that must be adhered to.  Even if the Court were to agree that the sections of the statutes provide private individuals with *rights*, there is no justification for a finding that any of these provisions include a private *remedy*.  *See Alexander*, 532 U.S. at 286.  The Court finds that 12 C.F.R. § 1024.17, 12 C.F.R. § 1024.34, and 12 C.F.R. § 1024.38 do not confer a private enforceable right of action that would allow Carter to move forward with his second Breach of Contract claim.

Carter's arguments to the contrary of the Court's finding are misplaced. First, Carter contends that he has a private cause of action under the statutory provisions because RESPA was incorporated and referenced in the Mortgage Agreement. According to Carter "[b]y incorporating RESPA within its Mortgage, Defendant, CrossCountry has consented to or is subject to a private cause of action." (Doc # 20, Pg ID 595) Carter has not directed the Court to any provisions of the Mortgage Agreement showing that CrossCountry has "consented" to RESPA, and the use of the term "RESPA" in the Agreement does not bind CrossCountry to being subjected to Carter's claims under that statute.

Second, Carter claims that *Schmidt* and *Kevelighan* support his Breach of Contract claim since the courts in those cases acknowledged that there was *potential* for RESPA to allow for a private cause of action and remedy. (*Id.*) This contention does not persuade the Court to agree with Carter. In *Schmidt*, the court found that the RESPA provisions at issue did not effectuate a privately enforceable statutory right. *Schmidt*, 106 F. Supp. 3d at 871. Further, the section of *Schmidt* that Carter quotes in support of his assertion indicates that legislation written as a general mandate does not often offer individuals private remedies. *Id.* at 869. In *Kevelighan*, the court determined that RESPA's "timely payments" provision did not afford the plaintiffs a private cause of action under that section of the statute. *Kevelighan*, 771 F. Supp. 2d at 770. Neither *Schmidt* nor *Kevelighan* help Carter make his argument.

Lastly, Carter argues that in *Marais* and *Michigan Nat. Bank*, the courts allowed private causes of action under RESPA. In *Marais*, the court addressed RESPA claims that involved the failure to timely address qualified written requests for information. *Marais*, 736 F.3d at 720. This type of RESPA claim is not relevant to this case. In *Michigan Nat. Bank*, the court discussed the proper standards for the performance of escrow agents, but did not analyze any of RESPA's provisions. *Michigan Nat. Bank*, 619 F. Supp. at 1156. *Marais* and *Michigan Nat. Bank* do not support Carter's argument.

Since there is a lack of a private cause of action under RESPA, the Court dismisses Carter's Breach of Contract claim that is premised on RESPA's above mentioned provisions.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant CrossCountry Mortgage, Inc.'s Motion to Dismiss (Doc # 18) is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that Defendant CrossCountry Mortgage, Inc.'s Motion to Dismiss (Doc # 18) is **DENIED** as to Plaintiff Daniel R. Carter's Breach of Contract claim (Common Law) (Count I).

IT IS FURTHER ORDERED that Defendant CrossCountry Mortgage, Inc.'s Motion to Dismiss (Doc # 18) is **GRANTED** as to Plaintiff Daniel R. Carter's Breach of Contract claim (RESPA and Regulation X) (Count II).

IT IS FURTHER ORDERED that the parties are required to appear for a status conference on September 23, 2019 at 2:30 p.m.

                                                        s/Denise Page Hood
                                                        United States District Court Judge

DATED: August 21, 2019